Fernando Gil
Reg. No. 29276-054
F.C.I. Gilmer
P.O. Box 6000
Glenville, WV 26351



# 14CV1336

IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 90-CR-306 |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| | ) | |
| v. | ) | MEMORANDUM OF LAW IN |
| | ) | CONJUNCTION WITH MOTION |
| | ) | UNDER 28 U.S.C. §2255(f)(3)-(4) |
| FERNANDO GIL | ) | |
| | ) | |
| Defendant-Movant, | ) | |
| | ) | |
| _____ | ) | |

Under section 2255(f)(3)-(4), of title 28 United States Code, Fernando Gil ("Gil"), Respectfully submits this motion in conjunction with a memorandum of law. In light of **Alleyne v. United States**, 133 s.ct. 2151 (June 17, 2013), and recently argued **Burrage v. United States**, 2014 U.S. Lexis 797 (Jan. 27, 2014).

## I. INTRODUCTION

Fernando Gil has been unconstitutionally incarcerated for more than two-decades. In 1990, Gil was named in one criminal count, Where a grand jury sitting in the Southern District of New

York returned an indictment charging Gil with violating 21 U.S.C. §846 (conspiracy with intent to distribute). No substantive count is charged, nor is there drug quantity mentioned in the indictment.

On September 18, 1991, Gil's trial began, and for more than five-months the government argued for a guilty verdict. At the close of trial the jury was asked -- by special verdict -- to determine Gil's forfeiture. Despite the opportunity the government did not request a special-verdict as to drug quantity. Instead, it was left to a general verdict which the jury determined was guilty. Next, the government failed to request a special-verdict regarding the specific dates in which Gil participated in the conspiracy. This is of great importance because Gil's alleged conduct straddled the Sentencing Reform Act ("SRA"). That is, absent a specific date Gil's sentence is parolable.

At sentencing, the court determined drug quantity and sentenced Gil to life under the SRA.

II. The Question of Whether __Teague's__ Nonretroactivity Principle Limits Relief Under §2255 Remains A Core Concern Following Danforth v. Minnesota.

  A. __Teague's__ Nonretroactivity Principle Does Not Limit The Availability Of Relief Under §2255,

In __Danforth v. Minnesota__, 128 s.ct. 1029, 1034 n.4 (2008), the court readily acknowledged a question exist whether the

_Teague_ rule applies to cases brought under 28 U.S.C. §2255 ("We note at the outset that this case does not the question,... whether the _Teague_ rule applies to cases brought under 28 U.S.C. §2255")

_Teague_ announced a "nonretroactivity principle" that "acts as a limitation on the power of federal courts to grant Habeas Corpus relief to... State prisoner[s]... [T]he _Teague_ principle protects not only the reasonable judgments of State courts but also the States' interest in finality quite apart from their courts." _Beard v. Banks_, 542 U.S. 406, 412-13 (2004)(citation omitted). The "function of _Teague's_... standard is to distinguish those develop-ments in the Supreme Court's jurisprudence that State judges should have anticipated from those they could not have been expected to forsee." _Id._ at 423 (Souter, J., dissenting).

_Teague's_ acute concern with interests of federalism and comity has prompted the court to recognize an open question as to whether the decision limits the availability of relief under §2255. Justice Brennan, dissenting in _Teague_, expressly noted the plurality opin-ion's reservation of the issues. _Teague_, 489 U.S. at 327. Roughly a decade later, in _Bousley v. United States_, 523 U.S. 614 (1998), the court declined to apply _Teague_ in a §2255 proceeding after pausing to acknowledge that an _Amicus Curiae_ had "urge[d]" such application. _Id._ at 619

Commentators as well have highlighted questions of _Teague's_ application under §2255. _See_ Douglas A. Berman, when will Scotus

address retroactivity?

The Supreme Court has not subsequently revisited the issue. This motion presents an excellent opportunity to examine the inter-section of Teague and §2255. Under the applicable limitation pro-vision, a §2255 motion is timely if: (1) It "assert[s]" a right within one year of the date that right "was initially recognized by the Supreme Court," Dodd v. United States, 545 U.S. 358 (2005); (2) The right was "newly recognized by the Supreme Court,"; and (3) The right is "made retroactively applicable to cases on collateral review." Id.

Here, the motion asserting Alleyne error is well within the one year of the Alleyne decision. In this posture, the case per-mits the court to review the recurring question of whether Teague controls the construction of the phrase "made retroactively applicable to cases on collateral review" in §2255 p.(3), or otherwise limits the availability of relief on motions under the statute.

**B.** Section 2255 Motions Do Not Sound In Habeas Corpus And Accordingly Are Outside The Scope Of Teague.

Properly interpreted, the text of section 2255 indicates that federal defendants who seek to correct sentence may do so by fur-ther proceedings incident to the original criminal prosecution, without resort to Habeas Corpus. Because Teague limits retroactive

-4-

application of new rules only in "collateral" proceedings, 489
U.S. at 310, the test it establishes should not be held to apply
to motions under §2255.


1. The Statutory Text, As Underscored By It's Legislative
   History And Remedial Structure, Distinguishes §2255
   From Habeas Corpus.


Despite some similarities, §2255 is not merely a codification
of Habeas Corpus for federal defendants. The statute directs
defendants to proceed by "motion." §2255 paras 2,3,4,7,8. The
provision also expressly distinguishes its motion remedy from
the Grit Writ. See §2255 para. 5; See also United States v.
Hayman, 342 U.S. 205, 220 (1952)("This [§2255 motion] is not a
Habeas Corpus proceeding.") In contrast, 28 U.S.C. §2254 describes
the relief available to state prisoners by application for a
"writ of Habeas Corpus," without contemplation of any proceeding
on motion.


Across the range of federal practice, a "motion" means a
request lodged within a previously commenced proceeding. Compare,
e.g., criminal procedure rule 7(a) (Defining "indictment" as
means by which felony offense "must be prosecuted" absent waiver)
with id. Rule 47 (providing for "motion" as means of applying
"to the court for an order"); Civil Proc. Rule 3 (requiring that
civil action be commenced by complaint") with id. Rule 7(a),(b)
(distinguishing complaints from motions); appellate procedure
Rule 3(a)(1)(requiring that appeal of right be taken by notice").

And id. at Rule 5(a)(1)(requiring that request for permissive
appeal be made by "petition") and id.at Rule 21(a)(requiring
that extraordinary writ be sought by "petition") with id. at
Rule 27 (authorizing motions as means to apply "for an order or
other relief"); Supreme Court Rules 12.1 and 17.2 and 18.1(forms
of review sought via "petition" or "notice") with id. Rule 21.1(a),
(b)(addressing relief available on "motion"); See also section
2254 Rule 2(d)(prescribing form of "petition" for writ of Habeas
Corpus brought by state prisoner).

Consistent with the statutory text, the legislative history
of section 2255 expressly states that the "motion remedy is in the
criminal proceeding." S.Rep. No. 80-1526 at 2 (1948). Congress
also expressly characterized §2255 as "an expeditious remedy for
correcting erroneous sentences without resort to Habeas Corpus,"
H.R. Rep. 80-308, App. at a180 (1947), and enumerated certain
advantages of the "motion remedy over the present Habeas Corpus,"
S. Rep. No. 80-1526 at 2.

In 1976, congress adopted the rules governing section 2255
proceedings. See Pub. L. No. 94-426, 90 stat. 1334. The advisory
committee note promulgated in connection with the rulemaking
process reiterated that "A motion under §2255 is a further step
in the movant's criminal case and not a separate civil action."
Section 2255 Rule 1 advisory committee's note(citing legislative
history of §2255).

These remarks in the legislative and rulemaking history were not idle asides. To the contrary, the breadth of remedial powers afforded by §2255 is contingent on the motion's character as an incident of the underlying criminal proceeding. In effect, the court exercises it's "Original Jurisdiction... of all offenses against the laws of the United States." 18 U.S.C. §3231. It may "correct the sentence," §2255 para 2, when, for example, <u>Alleyne</u> causes a term of incarceration to be fixed at a longer duration than arthorized by the jury's findings. By contrast, the core of Habeas Corpus jurisdiction is the judicial authority to examine the legality of custody. See <u>Rumsfelo v. Padilla</u>, 542 U.S. 426, 435 (2004)(identifying "challenges to present physical confinement" as "core challenges"). As a result, the essential remedial power associated with the great writ is that of compelling a prisoner's release, <u>e.g.</u>, <u>In Re Medley</u>, 134 U.S. 160, 173 (1890). With such release often conditioned on the State's failure to retry the petitioner within a desighated period of time, <u>Herrera v. Collins</u>, 506 U.S. 390, 403 (1993). Federal Habeas jurisdiction has never functioned to permit a federal court simply to adjust a sentence imposed by a State court, authorizing instead only the cruder remedy of voiding a sentence entirely, <u>Solem v. Helm</u>, 463 U.S. 277, 284, 303 (1983); <u>In Re Bonner</u>, 151 U.S. 242, 259, 262 (1894); <u>Moore v. Anderson</u>, 222 f. 3d 280, 286 (7th Cir. 2000).

Like it's statutory text, legislative history, and remedial breadth, §2255 rules of practice distinguish the motion remedy from the great writ.  Prisoner must "move the court which imposed"

This rationale is not persuasive. As further 1.B.2, the interest in finality exerts less force in federal post-conviction review of federal prosecutions than it does in federal court review of State convictions, and it is particularly attenuated when a federal defendant challenges only sentence. Indeed, as explained below, the interest is weakest when a sentencing challenge turns on Justice Breyer's controlling opinion in **Alleyne**.

The circuit courts' concern for disparity in federal court review of challenges by federal as distinct from State prisoners is also misplaced, because it neglects congress's enactment of different standards to govern post-conviction proceedings in each context. The antiterrorism and effective death penalty act ("AEDPA"), Pub. L. No. 104-132, 110 stat. 1214 (1996), expressly limited State prisoners to challenges of "A decision that was contrary to, or involved an unreasonable application of, clearly established federal law. As determined by the Supreme Court of the United States." See AEDPA §104, 110 stat. at 1219, **Codified** at 28 U.S.C. §2254(d)(1): **Burt v. Titlow**, 2013 U.S. Lexis 8037 (Nov. 7, 2013); **Carey v. Musladin**, 127 s.ct. 649, 654 (2006). Federal defendants, by contrast, proceed under a statute that plainly does not limit review to the precedent of the high court. See §2255 para 1. Similarly, with respect to State prisoners' Habeas petitions, AEDPA mandated deference to State courts' findings of fact and prescribed a new, heightened standard that must be satisfied before evidence will be heard. See AEDPA §104, 110 stat. at 1219,

Codified at 28 U.S.C. §2254(e). Compare §2255 para 2; Wilkinson v. Dotson, 544 U.S. 74, 87 (2005)(Scalia, J., Concurring).

In sum, the weakened interest in finality implicated by alleyne challenges to "requisite statutory factual predicate[s]" surrounding sentences, as discribed more fully below, with congress's enactment of limitations unique to federal Habeas review of State convictions, together displace the rationale on which the circuit courts have relied in presuming Teague to apply under §2255. As a matter of law, §2255's text, history, and it's structure, as evinced by the availability of remedies foreign to Habeas Corpus and rules delineating a motion-based practice, all demonstrate that this motion is a continuation in the original criminal case, not a separate proceeding in Habeas Corpus.

C. The Range Of Interests Properly Informing Retroactivity Analysis Militates Against Extension Of Teague's Nonretroactivity Principle To §2255 Motions, Particularly When Alleyne Error Is Asserted.

This motion -- as argued -- presents this court with an opportunity to address the proper balancing of the interests informing retroactivity analysis when a federal defendant moves under §2255 to correct a sentence on the basis of asserted Alleyne error. In this context, the concerns of federalism and comity safeguarded by Teague are wholly absent, and the interest in finality is of substantially diminished significance.

-10-

1. Proceedings Under 2255 Do Not Implicate
   Teague's Core Federalism Concerns.

   The plurality in **Teague** distilled the rationale essential to it's ruling as follows:

   > The cost imposed upon the State(s) by retroactive application of new rules of constitutional law on Habeas Corpus... generally far outweigh the benefits of this application. In many ways the application of new rules of cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, for it continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards furthermore,... (S)tate courts are understandably frustrated when they faithfully apply existing constitutional law only to have a federal court discover, during a (Habeas) proceeding, new constitutional commands.

Teague, 489 U.S. at 310 (emphasis in original; citations omitted).

   In the years since **Teague**, the Supreme Court of the United States has elaborated upon the gravity of the threat posed to federal-state balance by unsound exercise of federal Habeas jurisdiction to review State court convictions. "Our federal system recognizes the independent power of a State to articulate societal norms through criminal law; but the power of a State to

pass laws means little if the State cannot enforce them."
Calderon v. Thompson, 523 U.S. 538,556 (1998). Accordingly, federal
Habeas doctrine has of necessity be en informed not merely by
"Standards Of General Application," but also by "Jurisprudential
Limits" peculiar to the extraordinary interests implicated by
collateral attack upon "a criminal judgment entered in State
court." Id. at 553.

The "foremost" purpose served by federal Habeas jurisdiction
is "ensuring that State courts conduct criminal proceedings in
accordance with the constitution as interpreted at the time of
the proceedings." Saffle v. Parks, 494 U.S. 488. "In order to
perform this deterrence function... the Habeas court ne ed only
apply the constitutional standards that prevailed at the time
the original proceeding took place." Teague, 489 U.S. at 306.
Inde ed, it Must apply only such standards if State jurists are
to perceive issuance of the writ as meaningful censure for
failing to uphold the constitution. See Banks, 542 U.S. at 423
(Souter, J., dissenting). Teague, therefore "validates reasonable
good-faith interpretations of existing precedents made by State
courts even though they are shown to be contrary to later
decisions." Butler v. McKellar, 494 U.S. 407, 414 (1990).

Unlike Habeas Corpus, proceedings under 2255 do not require
the careful calibration of checks and balances essential to the
dual sovereignty established under the constitution's federalist

structure. Rather, the conviction or sentence under review was rendered not merely by a federal rather than a State court, but by the <u>Very Same</u> federal court, and typically by the very same federal <u>Judge</u>, that presided over the original proceedings. It can hardly be said in this context that there is need of any special "limitation on the power of federal courts," nor of attention to a "delicate State-Federal relationship." No deterrent function need be ensured -- nor would be served -- by limiting review to the questions of law already decided by the judge who sentenced the defendant. As one federal jurist has recently put it, in a consideration of retroactivity on **<u>United States v. Booker</u>**, 543 U.S. 220 (2005):

> In a section 2255 case... where comity and federalism are irrelevant, there is much less need to defer to the divergent views of federal judges who, in hindsight, did not correctly apply existing precedent to a new case. We are, after all, members of inferior courts established by the same sovereign (unlike State court judges), and if the Supreme Court says we were wrong, we should take our medicine and gladly apply the correct rule retroactively...

<u>Valentine v. United States</u>, 488 f.3d 325, 343 (6th Cir. 2007) (Martin, J., dissenting).

2. The Interest In Finality Is Not Pronounced In The
   2255 Context, Particularly When Defendant's
   Assert Error Under Alleyne.

     The absence of federalism and comity interests in the 2255

context leaves as Teague's remaining rationale "The principle of

finality which is essential to the operation of our criminal

justice system." Teague, 489 U.S. at 309. While this concern may

not be wholly absent when a defendant seeks to correct sentence

via 2255, it is considerably muted.


     The court's decision in Massaro v. United States, 538 U.S.

500 (2003), illuminates the generally point. There, the court

held that a defendant's failure to raise an ineffective assistance

of counsel claim on direct appeal does not preclude that claim's

subsequent assertion by motion under 2255. Id, at 504. The court

reasoned that the Procedural-Default Doctrine — generally

"adhered to by the courts to conserve judicial finality of

judgments," id. -- should give way because the district court

is the "forum best suited to developing the facts necessary to

determining the adequacy of representation." id. at 505. Massaro

thus stands for the proposition that, in the 2255 context, the

law's interest in finality should yield when adjudication in the

district court offers plain practical advantages. The same cannot

be said in the context of federal Habeas Corpus, in which federal

courts have continued to apply the procedural-default doctrine

inflexibly. See Gomez v. Jaimet, 350 f.3d 673, 678 (7th Cir. 2003)

-14-

(recognizing that State prisoners have no right under <u>Massaro</u> to wait until conclusion of direct appeal before raising ineffective assistance claims); <u>See also</u> <u>Sanchez-LLamas v. oregon</u>, 126 s.ct. 2669, 2687(2006)(confirming <u>Massaro's</u> reliance on distinction between State and federal prisoners).

Like the factual findings considered in <u>Massaro</u>, assertions of <u>Alleyne</u> error are best addressed by the sentencing court because an appellate court generally will not "know what the sentence would have been absent the error." The best solution is to "ask the sentencing judge." <u>United States v. Williams</u>, 399 f.3d 450, 458-59 (2d Cir. 2005)(Newman. J.); <u>United States v. Paladino</u>, 401 f.3d 471, 483 (7th Cir. 2005)(Posner, J.), <u>cert denied</u>, 546 U.S. 1175 (2006). Like the questions of fact essential to claims of ineffective assistance of counsel, the matters of determination of requisite statutory factual predicates essential to claims of <u>Alleyne</u> error give the district court a comparative institution advantage. For this reason, assertion of <u>alleyne</u> error may be addressed most expeditiously under 2255.

3. <u>Teague</u> Undermines A Second Conception Of The Judicial Role And Squanders Judicial Resources.

Substantial interests militate against extension of the <u>Teague</u> retroactivity test to motions under 2255. First, <u>Teague</u> requires a departure from the traditional judicial role, whether defined by reference to "The province and duty of the judicial

-15-

department to say what the law is," **Marbury v. Madison**, 1 cranch (5 U.S.) 137, 177 (1803), or the broader common law tradition. See **Mackey v. United States**, 401 U.S. 667, 677-81 (1971)(Harlan, J., concurring in two judgments and dissenting in one)(explaining that failure to apply new rules retroactively on direct appeal "entails an inexplicable and unjustifiable departure from the basic principle upon which rests the institution of judicial review"); **Linkletter v. Walker**, 381 U.S. 618, 622 (1965)("at common law there was no authority for the proposition that judicial decision made law only for the future.") "To hold a governmental act to be unconstitutional," as in **Alleyne**, "is not to announce that we forbid it, but that the constitution forbids it... Since the constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpretation of the constitution in a particular decision could take prospec-tive form does not make sense." **American Trucking Ass'ns v. Smith**, 496 U.S. 167, 201 (1990)(Scalia, J., concurring). By establishing an analytical framework tending to favor non-retroactive applica-tion, **Teague** has diluted this jurisprudential principle.

A second jurisprudential concern implicated by **Teague** is the strain upon judicial resources occasioned by it's fixed "order of battle" rule. Under **Teague**, a court may not dispose of a case on the ground that the rule sought to be given retroactive effect simply would not warrant relief were it applied on the merits of the case. **Caspari v. Bohlen**, 510 U.S. 383, 389 (1994). Nor may the

-16-

courts hold a rule not to be retroactive by selecting the analysis posing the fewest complexities. Instead, a Habeas court must first decide whether a conviction is final; If so, it must next decide whether the right asserted arises from a new rule of constitutional law; and, if so, only then may the court finally reach the question of whether the rule is retroactive. Banks, 542 U.S. at 411. yet the determination of whether a procedural rule is "new" has commonly proved difficult, e.g., Lambrix v. Singletary, 520 U.S. 518, 527, 39 (1997); Stringery v. Black, 503 U.S. 222, 228-237 (1992); Penry v. Lynaugh, 492 U.S. 302, 313-19 (1989), whereas the question of retroactivity may lend itself more frequently to summary analysis.

Members of the Supreme Court have expressed persistent discomfort with "rigid order of battle" rules suspected to engender inefficiencies akin to those created by Teague. See e.g., Scott v. Harris, 127 s.ct. 1769, 1774 n.4 (2007)(citation omitted)(inviting reconsideration of requirement under Saucier v. Katz, 533 U.S. 194 201 (2001), that courts applying doctrine of qualified immunity first determine whether constitutional right was violated before asking whether right was "clearly established"); See als id. at 16 (Ginsburg, J., concurring); id. at 18 (Breyer, J., concurring); Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 111 (1998)(Breyer, J., concurring in part and in judgment); See also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp. 127 s,ct, 1184, 1194 (2007).

In sum, the absence of federalism or comity concerns, the

-17-

diminished significance of finality both as a general proposition and in the specific context of **Alleyne**, the proper role of the American judiciary and the opportunity to conserve judicial resources all favor the fashioning of a distinct retroactivity standard.

D.     Alternatively, **Alleyne** repositions certain factors modifying them as elements leaving it quasi-substantive and therefore retroactive

One June 17, 2013, the Supreme Court overruled **McMillan v. Pennsylvania**, 477 U.S. 79 (1986), and **Harris v. United States**, 536 U.S. 545 (2002), with **Alleyne v. United States**, 133 S.Ct. 2151, 2166 (2013) ("The court overrules **McMillan** and **Harris**..."). In addition, **Alleyne** is a fractured decision controlled by Justice Breyer's observations. See **Marks v. United States**, 430 U.S. 188 (1977), which held:

> Where a maximum sentence is at issue, **Apprendi** means that a judge who wishes to impose a higher sentence cannot do so unless a jury finds the requisite statutory factual predicate.  Where a mandatory minimum sentence is at issue, application of **Apprendi** would mean that the government cannot force a judge who does not wish to impose a higher sentence to do so unless a jury finds the requisite statutory factual predicate.

**Alleyne**, 133 S.Ct. at 2167.

It is within this holding that retroactivity is decided. That is, Justice Breyer held that where a "requisite statutory factual predicate is involved in determining a statutory maximum,

-18-

or mandatory minimum, it must be charged and found beyond a
reasonable doubt.  In other words, if a statutory factor is
required to increase the floor or ceiling they are constitution-
ally protected.  It is undisputed that before **Alleyne** branishing
was considered a sentencing factor, but following **Alleyne** it is
reposition[ed] to an element making **Alleyne** a substantive
decision.  In this vein, the inquiry is determining the ident-
ification of the "requisite statutory factual predicate" that
triggers the higher floor, or exceeds the otherwise statutory
minimum, and then it is found beyond a reasonable doubt. Cf
**Johnson v. United States**, 720 F.3d 720 (8th Cir. 2013)

Substantive rules "include[] decisions that narrow the scope
of a criminal statute by interpreting its terms. **Schriro v.
Summerlin**, 542 U.S. 348, 351 (2004).  This includes interpretations
that modify an element of an offense, as the court recognized
in Summerlin, **Id.** at 354, a case involving the application of the
court's interpretations of the Sixth Amendment right to a jury
trial in **Ring v. Arizona**, 536 U.S. 584 (2002), and its predecessor,
**Apprendi v. New Jersey**, 530 U.S. 466 (2000).  Ring and Apprendi
announced that "[O]ther than the fact of a prior conviction, any
fact that increases the penalty must be submitted to a jury, and
proven beyond a reasonable doubt."" **Summerlin**, 542 U.S. at 350
(Alteration in original) (Quoting **Apprendi**, 530 U.S. at 490).


III. Ground One:
          In a time before **Apprendi** [v. New Jersey, 530
     U.S. 466 (2000)], but after **McMillan** [v. Penn-

-19-

<u>sylvania</u>, 477 U.S. 79 (1986)], Fernando Gil was sentenced to life in prison based on conduct that was neither charged in the indictment or proved to the jury beyond a reasonable doubt.  Does Alleyne v. United States, 133 S.Ct. 2151 (June 17, 2013), require vacatur of Gil's life sentence where the court sentenced him for a crime the jury did not find.

A.   <u>The Miscarriage of Justice</u>

In this case, Gil focuses on Judge Henry J. Friendly's classic article, Is Innocence Irrelevant?, Collateral Attack On Criminal Judgements, 38 U.Chi.L.Rev. 142 (1970).  As this court may recall, Judge Friendly's article not only advocated that habeas corpus be directed to correcting the injustice of convicting persons who were probably innocent; it also identified a second form of fundamental miscarriage of justice: "cases [in which] the criminal process itself has broken down," so the constitutional "attack [therefore] concerns the very basis of the criminal process." <u>Id</u>. at 151-52.  "In these [types of] case," Judge Friendly maintained, "few would object to allowing collateral attack." <u>Id</u>. at 152.  Judge Friendly thus viewed his two categories of miscarriage of justice -- probable factual innocence and fundamental breakdown of the criminal process -- as alternative bases for habeas corpus review of constitutional claims. <u>Id</u>. at 152.  In a case like this one, where it is alleged that the constitutional truth-finding process has broken down and in fundamental ways, it

-20-

could be determined that <u>Kuhlmann v. Wilson</u>, 477 U.S. 436 (1986)'s "Miscarriage of Justice" inquiry effectively combines Judge Friendly's categories.

It is an impossibility to suggest that the is responsible for the conviction that corresponds to the life sentence. That is, the jury's verdict reaches 21 U.S.C. § 841 (b)(1)(C), at best. Here, where a criminal process removes from the jury "requisite statutory factual predicate[s],", necessary to impose a ten-year mandatory minimum -- and consequently -- a life sentence destroys the very core of the Sixth Amendment, in conjunction with the Due Process Clause. Such a breakdown in the criminal process is precisely what Judge Friendly cautioned amounted to a fundamental miscarriage of justice. It is this fundamental flaw that requires relief for this case.

B. <u>Alleyne Commands Gil's Release</u>

This court should send a clear message crystallizing a criminal process that does not breakdown at a jury's general verdict. In a near lone wolf act the Second Circuit addressed the piecemeal application of § 841 -- something not addressed in <u>**Apprendi**</u>, along with mandatory minimums. <u>**United States v. Gonzales**</u>, 420 F.3d 111, 125 (2d Cir. 2005). In <u>Gonzales</u>, the court held that "<u>a prepnderance finding as to drug quantity does not require imposition of a § 841(b)(1)(A) or (b)(1)(B) mandatory minimum sentence</u>." <u>Id</u>. (Emphasis in original).

-21-

After conducting a thorough analysis of **Apprendi** and the Sixth Amendment cases that followed it, that court held the following:

> Thus we cannot conclude, as the government urges, that **Apprendi** and its progeny apply only to prosecutions that actually result in sentences exceeding otherwise applicable maximums. Nor can we conclude, after **Apprendi** and our own decision in **Thomas**, that district courts are nevertheless required to treat drug quantity only as a sentencing factor for imposing §841(b)(1)(a) and (b)(1)(b) mandatory minimums. The **Apprendi** rule applies to the resolution of any fact that would substantiate an increased sentencing range for the one otherwise applicable to the case. Because mandatory minimums operate in tandem with increased maximums in §841(b)(1)(a) and (b)(1)(B) to create sentencing ranges that raise the limit of the possible federal sentence, **Shepard v. United States**, [125 S.ct. 1254, 1262 (2005)], drug quantity must be deemed an element for all purposes relevant to the application of these increased ranges.

**Gonzales**, 420 f.2d at 129. The statutory parameters of Gil's sentence can only be held to be those which the jury determined beyond a reasonable doubt -- a violation of §841(b)(1)(c) alleging and mandating a statutory sentencing range of zero to twenty years incarceration.

Title 21 U.S.C. §841(b)(1)(a). A careful reading of the indictment and §841 establishes that Gil's offense of conviction conduct was confused with his supposed "relevant conduct" by the sentencing court and the government. Critically, Gil is not charged in a substantive count, and an increase to a ten-year mandatory minimum is necessary to achieve a life sentence. The scope of his offense of conviction conduct for purposes of any statutory mandatory minimum sentence can be, and was, by the

-22-

charging document and subsequent jury verdict. The government alone has the charging authority which can be used to invoke a mandatory minimum sentence. Here, Gil did not stipulate to any drug quantity, and the jury did not subsequently determine drug quantity. Instead, the government told the court we will prove guilt and then use the preponderance of the evidence standard to raise the mandatory minimum to ten years so it could achieve the life sentence. Cf. United States v. Darmand, 3 F.3d 1578, 1581 (2d Cir. 1993); United States v. Sturdivant, 244 F.3d 71, 78 (2d Cir. 2001); See Also United States v. Estrada, 42 F.3d 228, 232 - 33 (4th Cir. 1994); United States v. Harris, 39 F.3d 1262, 1271-72 (4th Cir. 1994). While these decisions complement Gil's argument, without Alleyne one cannot demonstrate the breakdown in the criminal process that manifests the fundamental mis-carriage of justice.

## CONCLUSION AND RELIEF REQUESTED

Fernando Gil is serving a life sentence known now to be unconstitutional. Alleyne instructs courts that in order to increase a mandatory minimum the requisite statutory factual predicate must be found by the jury. Here, there is no drug quantity found beyond a reasonable doubt. Therefore, Gil is entitled to re-sentencing under 21 U.S.C. § 841(b)(1)(C).

Filed February 14, 2014
28 U.S.C. § 1746

_____
Fernando Gil

−23−